J. S73006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | : | IN THE SUPERIOR COURT OF |
| AS TRUSTEE FOR STRUCTURED ASSET | : | PENNSYLVANIA |
| INVESTMENT LOAN TRUST MORTGAGE | : | |
| PASS-THROUGH CERTIFICATES, | : | |
| SERIES 2006-BNC3 | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES E. McGOWAN, THE UNITED | : | |
| STATES OF AMERICA | : | No. 1843 WDA 2015 |
| | : | |
| APPEAL OF:  CHARLES E. McGOWAN | : | |

Appeal from the Order Entered November 2, 2015,
in the Court of Common Pleas of Westmoreland County
Civil Division at No. 3065 OF 2014

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 22, 2016**

Charles E. McGowan ("appellant") appeals the November 2, 2015 order of the Court of Common Pleas of Westmoreland County that granted the motion for summary judgment of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-BNC3 ("appellee"), and entered an ***in rem*** judgment in favor of appellee and against appellant in the amount of $106,412.29 plus interest from April 21, 2015, and other costs and charges

collectible under the mortgage, for foreclosure and sale of the mortgaged property.[1]

On May 22, 2006, appellant made, executed, and delivered a mortgage for real property located at 1360 Conway Drive, Greensburg, Pennsylvania, to BNC Mortgage, Inc. ("BNC"). BNC subsequently assigned the mortgage to appellee. On July 1, 2014, appellee filed a complaint in mortgage foreclosure and alleged that the mortgage was in default because monthly payments of principal and interest due January 1, 2012, and each month thereafter had not been made. Appellee alleged that the amount due and owing was $97,221.64, which was comprised of the principal balance of $72,803.72, interest from December 1, 2011 to May 29, 2014 of $17,252.38, an escrow deficit of $5,593.27, and late charges, property inspections, appraisal/broker's price opinion, and prior servicer fees of $1,562.77. The complaint was verified by Caroline Cochran ("Cochran"), contract management coordinator for Ocwen Loan Servicing, LLC ("Ocwen"). In the verification, Cochran explained that appellee delegated the mortgage

---

[1] On October 31, 2014, the trial court entered a consent judgment in which appellee and the United States of America ("U.S.") agreed that a judgment would be entered in favor of appellee and against the U.S. for foreclosure of the mortgage of appellant and for sale of the mortgaged property of appellant. It was further ordered that the U.S. shall be notified by appellee of the date, time, and place for any sheriff's sale of the real property of appellant, that the U.S. shall be entitled to payment from the proceeds of the sheriff's sale to the extent its proper priority would entitle it to the same, and the U.S. shall be entitled to redeem the property within 120 days from the date of sale as provided by 28 U.S.C. § 2410. The U.S. is not participating in the proceedings before this court.

servicing responsibility to Ocwen for appellant's loan. As a result, Ocwen possessed all the documents and records that supported the statements in the complaint and appellee lacked sufficient information to make the verification because it did not maintain the business records for the mortgage. While initial attempts to effect service were unsuccessful, service of the complaint was made on July 3, 2014, at 10 Old Clairton Road, Suite 12A, in Pleasant Hills, Pennsylvania, at a United Parcel Service Store where appellant maintained a post office box.

On August 25, 2014, appellant preliminarily objected to the complaint on the basis of allegedly ineffective service of process, the failure to identify the particulars of default, the failure to identify sufficiently the parties, the failure to identify the transaction through a note, and that the verification was spurious. On October 22, 2014, the trial court overruled the preliminary objections and directed appellant to file an answer.

In an answer filed November 21, 2014, appellant denied the material allegations. Appellant averred in new matter that the trial court lacked personal jurisdiction over him because he was not properly served, appellee failed to state a cause of action because appellee did not identify itself as a person entitled to enforce the note, did not allege a dishonor on the promissory note, and that the trial court also lacked subject matter jurisdiction over him since appellee did not properly assert a default on the mortgage. Appellant also asserted a host of affirmative defenses.

On June 26, 2015, appellee moved for summary judgment and alleged that there were no material facts in dispute regarding appellant's default on the mortgage. The motion contained an affidavit from Peter Nocero ("Nocero"), contract management coordinator from Ocwen, which explained that the mortgage had been assigned to appellee and that appellant had failed to make the scheduled payments beginning with the payment that was due on January 1, 2012. At this point, the amount due and owing according to Nocero was $106,412.29.

On August 3, 2015, appellant moved to dismiss the motion for summary judgment and alleged he had never been served with a complaint and that appellee had not properly sent the motion for summary judgment, brief in support of summary judgment, and scheduling order.

On August 20, 2015, appellant moved to strike the motion for summary judgment on the basis that the trial court lacked personal jurisdiction because appellee had not served appellant with a copy of the complaint, appellee violated a court scheduling order, appellee failed to show that it had standing, appellant had not admitted to a default on the mortgage, the trial court lacked subject matter jurisdiction, the mortgage contract was void **ab initio** because it was based upon LIBOR[2] rates that are

---

[2] LIBOR stands for the London InterBank Offered Rate. LIBOR is the annualized, average interest rate at which a select group of large, reputable banks that participate in the London interbank money market can borrow unsecured funds from other banks. (http://fedprimerate.com/libor/index.html.)

fraudulently manipulated, and appellee violated Section 1692g of the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692g, because it did not send an initial communication to appellant stating that it was a debt collector trying to collect a debt.

Following oral argument on September 4, 2015, the trial court denied the motion to dismiss and gave appellant 30 days to file a brief in opposition to the motion for summary judgment. By order dated November 2, 2015, the trial court determined that appellee was entitled to summary judgment and entered an **in rem** judgment in favor of appellee and against appellant in the amount of $106,412.29 plus interest from April 21, 2015, and other costs and charges collectible under the mortgage for foreclosure and sale of the mortgaged property. On November 20, 2015, appellant appealed to this court.

On appeal to this court, appellant raises the following issues for our review:

> 1. Did Plaintiff/Appellee lack standing to bring this action because the pre-acceleration notice required by Paragraph 22 of the Mortgage was not sent, and because the Act 91 Notice is defective?
>
> 2. Did the [t]rial [c]ourt lack personal jurisdiction over [appellant] since the Plaintiff/appellee did not serve [a]ppellant . . . with a copy of the Complaint as required by Pa.R.C.P. No. 402?
>
> 3. Did the [t]rial [c]ourt lack subject matter jurisdiction in this mortgage foreclosure case where the Plaintiff/Appellee did not provide

evidence that it had standing as the Holder in Due Course to enforce a promissory note signed by [appellant]?

4. Did the [t]rial [c]ourt err in granting summary judgment for Plaintiff/Appellee where the Plaintiff/Appellee did not prove the existence of a default upon the mortgage?

5. Did the [t]rial [c]ourt err in granting summary judgment for Plaintiff/Appellee where the Plaintiff/Appellee's Motion for Summary Judgment did not include a Statement of Undisputed Facts as required by 25 Pa.C.S.A. [§] 1021.94a(b)(1)(ii) and 25 Pa.C.S.A. [§] 1021.94a(d)?

6. Is the Summary Judgment void because the fixed-rate mortgage contract itself is void ab initio because the interest rate is based upon the LIBOR rates which are fraudulently manipulated by the banks?

Appellant's brief at 6.

This court reviews a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

> Thus, summary judgment is proper only when the uncontroverted [sic] allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.
>
> [O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

> *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 650, 651 (Pa.Super. 2002).

*Wright v. Allied Signal, Inc.*, 963 A.2d 511, 514 (Pa.Super. 2008) (citation omitted). Summary judgment in mortgage foreclosure actions is subject to the same rules as any other civil action. *See* Pa.R.C.P. 1141(b).

Initially, appellant contends that the trial court lacked subject matter jurisdiction to hear this case because there is nothing in the record to indicate that appellee served him with a Notice of Default as contractually

required by paragraphs 20 and 22 of the Mortgage Security Contract Agreement before accelerating the loan and proceeding with foreclosure.

A review of the exhibits attached to the complaint indicates that a notice of default labeled "Act 91 Notice Take Action to Save your Home from Foreclosure" was sent to appellant at the address where he received service: 10 Old Clairton Road, Suite 12A, Pleasant Hills, Pennsylvania. The notice also indicates that it was sent to appellant by first class mail and by certified mail with the certified mail number indicated on the form. This court does not agree with appellant's contention that appellee failed to properly issue a notice of default so that it lacked standing.

Appellant next contends that the trial court lacked personal jurisdiction over appellant since appellee did not serve him with a copy of the complaint as required by the Pennsylvania Rules of Civil Procedure. Appellant asserts that the Sheriff made only one attempt to serve him at his actual residence: 540 Lisa Drive, West Mifflin, Pennsylvania. As a result, appellant believes that appellee's request for alternative service was premature because it only attempted service at his domicile once. Appellant argues that there is nothing in the record to indicate that appellee served him with a copy of the complaint in accordance with the trial court's November 21, 2014 order which permitted service by mail and by posting at the property. Appellant also disagrees with the trial court's determination that he waived any objection to lack of service of the complaint when he filed an answer to it.

Appellant asserts that he filed an answer under threat, duress, and coercion because he believed that the trial court would enter a default judgment against him if he did not answer the complaint.

Rule 402 of the Pennsylvania Rules of Civil Procedure provides in pertinent part:

> (a) Original process may be served
>
> > (1) By handing a copy to the defendant; or
> >
> > (2) By handing a copy
> >
> > > (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or
> > >
> > > (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or
> > >
> > > (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa.R.C.P. 402(a).

Appellee argues that it properly served appellant when it served appellant at the UPS store at 12 Old Clairton Road, Suite 12A, Pleasant Hills, Pennsylvania, in compliance with Pennsylvania Rule of Civil Procedure 402(a)(2)(iii). Appellee attempted to serve appellant both at the mortgaged property and at another address for him, 3567 Mountain View Drive, #122, West Mifflin, Pennsylvania, but the Sheriff of Allegheny County as deputized by the Sheriff of Westmoreland County found the property vacant. Appellant established the UPS store as his address. The Sheriff of Allegheny County served appellant by way of Mr. Nestor, the UPS store manager, who accepted service on behalf of appellant. Although appellant argues that Nestor was not authorized to accept service, the sheriff's affidavit of service creates a presumption of effective service. **See Hollinger v. Hollinger**, 206 A.2d 1 (Pa. 1965) (in the absence of fraud, the return of service by a sheriff, which is full and complete, is conclusive and immune from attack by extrinsic evidence). The trial court did not err when it determined that appellant was properly served.

In addition, the trial court, by order dated November 21, 2014, directed appellee to serve a copy of the complaint by posting at the mortgaged property and by first class mail to three "last known addresses" of appellant which included the UPS store at 10 Old Clairton Road, Suite 12A, Pleasant Hills, Pennsylvania, as well as the mortgaged premises. There is no allegation that appellee did not comply with this order.

Appellant next contends that the trial court lacked subject matter jurisdiction where appellee did not provide evidence that it had standing as the holder in due course to enforce a promissory note signed by appellant. First, appellant argues that none of the pleadings filed by appellee, subsequent to the filing of the complaint, were verified as required by Pennsylvania Rule of Civil Procedure 1024. A review of the record including appellant's motion to dismiss the motion for summary judgment and his motion to strike the motion for summary judgment fails to reveal that appellant raised this point about verification beyond verification of the complaint before the trial court. Therefore, it is waived. Pennsylvania Rule of Civil Procedure 302(a) provides that only issues properly raised and preserved in the trial court will be considered on appeal.

Second, with respect to whether appellee had standing, appellant argues that appellee failed to offer proof that it was the holder of the promissory note. Appellant notes that appellee failed to attach a copy of the note to the complaint though it did when it responded to appellant's preliminary objections. Appellant argues that appellee lacked standing because it failed to prove that it was the holder of a promissory note signed by appellant. Further, appellant asserts that because appellee did not possess the note, it could not institute foreclosure proceedings.

Pennsylvania Rule of Civil Procedure 2002 provides, "[e]xcept as otherwise provided . . . all actions shall be prosecuted by and in the name of

the real party in interest, without distinction between contracts under seal and parol contracts." Pa.R.C.P. 2002(a); *see also J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1258 (Pa.Super. 2013) (finding a debtor's claim that appellee bank was not a real party in interest to bring foreclosure action was a challenge to appellee's standing). "[A] real party in interest is a [p]erson who will be entitled to benefits of an action if successful. . . . [A] party is a real party in interest if it has the legal right under the applicable substantive law to enforce the claim in question." *U.S. Bank, N.A. v. Mallory*, 982 A.2d 986, 993-994 (Pa.Super. 2009) (citation and quotation marks omitted; some brackets in original).

In a mortgage foreclosure action, the mortgagee is the real party in interest. *See Wells Fargo Bank, N.A. v. Lupori*, 8 A.3d 919, 922 n.3 (Pa.Super. 2010). Of course, an original mortgagee may assign its interest as mortgagee, as was the case here. This is made evident under our Pennsylvania Rules of Civil Procedure governing actions in mortgage foreclosure that require a plaintiff in a mortgage foreclosure action specifically to name the parties to the mortgage and the fact of any assignments. Pa.R.C.P. 1147. A person foreclosing on a mortgage, however, also must own or hold the note. This is so because a mortgage is only the security instrument that ensures repayment of the indebtedness under a note to real property. *See Carpenter v. Longan*, 83 U.S. 271, 275 (1872) (noting "all authorities agree the debt is the principal thing and the

mortgage an accessory."). A mortgage can have no separate existence. *Id.* When a note is paid, the mortgage expires. *Id.* On the other hand, a person may choose to proceed in an action only upon a note and forego an action in foreclosure upon the collateral pledged to secure repayment of the note. *See Harper v. Lukens*, 112 A. 636, 637 (Pa. 1921) (noting, "as suit is expressly based upon the note, it was not necessary to prove the agreement as to the collateral."). For our instant purposes, this is all to say that to establish standing in this foreclosure action, appellee had to plead ownership of the mortgage under Rule 1147, and have the right to make demand upon the note secured by the mortgage.[3]

Here, appellant alleged that appellee failed to prove that it had standing to enforce the note because appellee did not establish that it had possession of the promissory note when it filed its complaint in mortgage foreclosure. Appellant argues that the note attached to the motion for summary judgment does not establish that appellee owned the note because no witness verified the note or testified to its authenticity. Once again, appellant failed to raise any issue based on verification before the trial court so any argument based on verification is waived.

---

[3] The rules relating to mortgage foreclosure actions do not expressly require that the existence of the note and its holder be pled in the action. Nonetheless, a mortgagee must hold the note secured by a mortgage to foreclose upon a property. "The note and mortgage are inseparable; the former as essential, the latter as an incident." *Longan*, 83 U.S. at 274.

The trial court determined that appellee had been assigned the mortgage and that the note was endorsed in blank, was negotiable, and was possessed by appellee prior to the commencement of the foreclosure action. (Trial court opinion, 12/23/15 at 3.)

Here, the note produced by appellee indicated that appellant was the borrower and BNC Mortgage, Inc., was the lender. An allonge to the note was endorsed without recourse in blank by Eleanora Martino, Vice President of Quality Assurance for BNC Mortgage, Inc. A note endorsed in blank becomes payable to "bearer" and may be negotiated by transfer of possession alone until specially endorsed. *See* 13 Pa.C.S.A. §§ 3109(a), 3205(b). The note as a negotiable instrument entitles the holder of the note to enforcement of the obligation. *See id.* §§ 3109(a), 3301. Thus, appellant's argument that ownership of the note cannot be established in appellee because there was no formal assignment or transfer is unavailing, because "the chain of possession by which [a party] c[o]me[s] to hold the [n]ote [is] immaterial to its enforceability by [the party]." *Murray*, 63 A.3d at 1266; *see Bank of America, N.A. v. Gibson*, 102 A.3d 462, 466 (Pa.Super. 2014) (rejecting an identical argument). Appellee, as the holder of the note, a negotiable instrument not challenged herein, was entitled to make demand upon and to enforce the obligations under the note. Accordingly, given appellee's ownership of the mortgage and possession of

- 14 -

the note, the trial court did not err in concluding that appellee had standing as a real party in interest to bring the underlying foreclosure action.

Appellant continues to argue that appellee did not possess the note and did not prove the existence of endorsements to the note and that Mortgage Electronic Registration Systems, Inc. ("MERS"), did not have possession of the note and lacked authority to assign the note.

Appellee produced the note before the trial court. Further, to the extent that appellant contends that MERS lacked standing to foreclose because it did not hold the note, this argument is meritless. MERS was not a party to this litigation, did not seek to enforce an interest in the underlying loan in the litigation, and was only involved to the extent that it was a nominee for the original lender. In addition, while appellant asserts that MERS could not assign the note, appellee never asserted that MERS assigned the note to appellee. Further, in *Murray*, 63 A.3d at 1265-1266, this court held that a note secured by a mortgage was a negotiable instrument governed by Section 3104 of the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. § 3104, such that defects in the chain of possession did not affect the right of the mortgagee to enforce the note.

Appellant next contends that the trial court erred when it granted summary judgment because appellee did not prove the existence of a default upon the mortgage. Appellant argues that because appellee did not

plead a default upon the promissory note, it could not claim a default on the mortgage.

Pennsylvania Rule of Civil Procedure 1147 provides in pertinent part:

>   (a)   The plaintiff shall set forth in the complaint:
>
>   (1)   the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;
>
>   (2)   a description of the land subject to the mortgage;
>
>   (3)   the names, addresses and interest of the defendants in the action and that the present real owner is unknown if the real owner is not made a party;
>
>   (4)   a specific averment of default;
>
>   (5)   an itemized statement of the amount due; and
>
>   (6)   a demand for judgment for the amount due.

Pa.R.C.P. 1147(a).

A review of the complaint reveals that appellee complied with the requirements of Pa.R.C.P. 1147(a).

Appellant also argues that the affidavit of Nocero does not offer any evidence of a default to support the motion for summary judgment. Nocero, a contract management coordinator for Ocwen, states in the affidavit, that he had access to the business records maintained in the servicing of the

mortgage in question, that appellant entered into the mortgage with MERS, the nominee for BNC Mortgage, Inc., that the mortgage was assigned to appellee, that appellant's payment was due and owing on January 1, 2012, and for each month thereafter, and set forth the amounts due. Appellant argues that Nocero is not a competent witness because he does not go into detail about his knowledge about the facts to which he attests.

This court does not find any merit in appellant's claims here. In order for summary judgment to be proper in a mortgage foreclosure action, the moving party must establish the amount of the mortgage, that the mortgage is in default, and that the mortgagor has failed to pay interest on the mortgage. ***Cunningham v. McWilliams***, 714 A.2d 1054, 1057 (Pa.Super. 1998). Appellee did so. Nocero's affidavit established how he had access to the information. Appellant points to no statute, rule, or case law that requires the degree of specificity demanded by appellant regarding exactly how Nocero acquired the information.

Furthermore, when responding to the allegations of default listed in the complaint in his answer, appellant did not provide specific denials as required under Pennsylvania Rule of Civil Procedure 1029. Rule 1029 provides in pertinent part:

> (b)     Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivision (c) of this rule, shall have the effect of an admission.

> (c) A statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial.

Pa.R.C.P. No. 1029(b)-(c).

In his answer, appellant responded with general denials except for his argument that appellee lacked standing. The trial court did not err when it granted summary judgment.

Appellant next contends that the trial court erred when it granted summary judgment where appellee's motion for summary judgment did not include a statement of undisputed facts.

Appellee asserts that appellant waived this issue because he did not raise it before the trial court. Appellant admits that he did not raise the issue before the trial court. Accordingly, this issue is waived. *See* Pa.R.A.P. 302(b).

Finally, appellant argues that the summary judgment is void because the fixed rate mortgage contract is void *ab initio* because the interest rate is based upon LIBOR which is fraudulently manipulated by the banks. Appellant argues that a cartel of banks act together criminally to set the rates such that his mortgage rate was fraudulently established. This argument has no merit. Regardless of the actions of banks that set the LIBOR rates, appellant agreed to the rate when he signed the mortgage and obtained the loan and then defaulted on his obligation.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  <u>12/22/2016</u>